IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2001

## STATE OF TENNESSEE v. GREGORY SCOTT ALLISON

**Appeal from the Circuit Court for Blount County**
**No. C-10277      D. Kelly Thomas, Jr., Judge**

---

**No. E2001-00248-CCA-R3-CD**
**March 25, 2002**

---

The defendant, Gregory Scott Allison, appeals from the Blount County Circuit Court's revoking his probation that was ordered for his sentences for burglary and theft. The defendant contends that although the trial court may have been justified in finding that he violated the terms of his probation, it erred in sentencing him to confinement. We affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal); Raymond M. Garner, District Public Defender; and Shawn G. Graham, Assistant District Public Defender, Maryville, Tennessee (at trial), for the appellant, Gregory Scott Allison.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Kirk E. Andrews, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Upon his guilty pleas to burglary, a Class D felony, and misdemeanor theft, the defendant was sentenced to concurrent sentences of three years and eleven months and twenty-nine days. Upon the defendant serving thirty days in jail, the remainder of his sentences were to be served on supervised probation. The record reflects that the defendant successfully completed his thirty-day jail sentence on May 17, 1998.

In October 1998, the defendant's probation supervisor filed a probation violation warrant, alleging that the defendant had violated several terms of his probation, stating that he had been cited with driving on a suspended license, had been charged with aggravated burglary, had failed to obtain employment, had failed to report to his probation officer, and had failed to pay court costs. In July

1999, the trial court ordered that the defendant serve six months confinement for violating probation. In March 2000, the trial court placed the defendant into the community corrections program, but in April 2000, the trial court ordered that the defendant serve seven consecutive weekends in the Blount County Jail for his failure to attend treatment sessions at the Kress Mental Health Center as required by his community corrections contract. The defendant served five weekends in jail, and on May 23, 2000, the trial court agreed to waive the remaining weekends if the defendant would successfully complete fifteen months in the Teen Challenge Program. The defendant left the program after only one month, and on October 31, 2000, the defendant's community corrections supervisor filed a violation of community corrections affidavit, alleging that the defendant had tested positive for marijuana.

At the revocation hearing, Pat Ballard, the defendant's community corrections supervisor, testified that the defendant had physical, mental, and chemical dependency problems. She said that he failed to pay court costs, failed to perform community service work, failed to attend treatment sessions at the Kress Mental Health Center, and failed to attend her group therapy sessions. She said that the defendant did not attend treatment and therapy sessions because he had an operation on one of his club feet and because he was sick with pneumonia and bronchitis. She said that although the defendant asked to go into the Teen Challenge Program, his club feet physically prevented him from completing the program. She said that the defendant could not benefit from community corrections because he did not attend treatment and therapy sessions.

Ms. Ballard testified that the defendant could always get a doctor's excuse for missing his appointments. She said that although the defendant needed to attend therapy meetings twice a week, his mother could only bring him once a week. She said that although the defendant had been providing her with doctor's excuses for his missed appointments, he stopped giving her medical excuses in December 2000. She said that after the defendant's brother died in the fall of 2000, he tested positive for marijuana. She said that the defendant told her that he used marijuana to help him cope with his brother's death. She said that the defendant was mentally depressed and suicidal and that she did not know how to supervise him. She said that the defendant was sick all of the time and that nothing in the community corrections program could help him.

On cross-examination, Ms. Ballard testified that before entering the Teen Challenge Program, the defendant would attend meetings at the Kress Center when he did not have a medical excuse. She said that the defendant recently had been hospitalized at Lakeshore Mental Health. She said that the defendant needed the benefit of group therapy, which he was not getting.

The defendant testified that at the time of the hearing, he was twenty-six years old, single, and unemployed. He said that after entering the community corrections program in 1999, his physical and mental conditions got worse. He said that his brother and grandmother had died recently and that he did not want to deal with life. He said that he missed his brother.

The defendant acknowledged that he missed some meetings at the Kress Center and that he was ordered to serve seven weekends in jail for missing those meetings. He said that he served five

weekends in jail before entering into the Teen Challenge Program. He said that it was his idea to go into the Teen Challenge Program and that he had thought the program would help him. He said that he went to Bluefield, Virginia to participate in the program but that he could not complete it because he could not work in the mountains with his club feet. He said that he asked to be transported into another program where the land is flat but that the Teen Challenge Program workers in Virginia did not want him to leave their program.

The defendant testified that when he returned to Blount County, he paid his $2,200 in fines and that Pat Ballard told him that he had to start attending her group therapy classes. He said that he missed some of the classes because he had an operation on one of his feet and could not walk. He said that he also missed Ms. Ballard's classes because of his brother's death and because he got sick. He said that he took medication for panic attacks and bipolar disorder, that he was scared to ride in a car or be in groups, and that he did not go to the grocery store or go out with friends. The defendant acknowledged failing a drug test in October 2000 and said that he smoked marijuana eight days before the revocation hearing. He acknowledged that if his health and transportation situations had been better, he would have been in a better position to keep his appointments at the Kress Center and with Ms. Ballard.

On cross-examination, the defendant said that he got the marijuana from a high school friend, and he acknowledged having a conviction for aggravated burglary. He said that he did not graduate from high school but that he obtained his GED. He said that despite his medical problems, he was turned down for federal Social Security benefits. He said that his mother had transportation but that it was not always reliable. He said that he had no excuse for smoking marijuana eight days before the hearing and that although he had been very sick with bronchitis, he was never hospitalized.

Carol Noce, the defendant's mother, testified that the defendant had lived with her all of his life and that he was born with club feet. She said that the defendant had been a patient at Overlook Mental Health since he was six years old and that he suffered from bipolar disorder and panic syndrome. She said that about three weeks before the revocation hearing, the defendant was hospitalized for seven days at Lakeshore Mental Health. She said that the defendant started missing his meetings with Ms. Ballard in September 2000, when his brother died. She said that he missed more meetings in October, November, and December because he had a foot operation and because he was sick with bronchitis and pneumonia.

On cross-examination, Ms. Noce said that she did not work outside the home and that she was willing to take the defendant to therapy meetings more than once a week. Said that the defendant had never held a job for more than three months. She said that the defendant liked to work outside but that he had not worked in three years. She said that he used to work for men who installed swimming pools and cut down trees.

The trial court held that the defendant violated the terms of his community corrections by failing a drug screen and failing to complete the Teen Challenge Program. It noted that the defendant had a "long list" of criminal convictions and that he had used marijuana eight days before

the revocation hearing. The trial court agreed that the defendant had physical, emotional, and chemical dependency problems and that he needed more supervision and treatment than the community corrections program could provide. It also stated that the defendant had shown that he did not want to participate in the community corrections program. Finding that the defendant might be able to benefit from the Department of Correction's Special Needs Unit, the trial court revoked the defendant's probation and ordered that he serve the remainder of his sentence in incarceration.

Although the defendant admits that he violated the terms of his community corrections program, he contends that the trial court's disposition of the case was improper. He argues that the trial court should have ordered that he be placed into a therapeutic halfway house or serve a period of split confinement followed by placement into an inpatient treatment program in a secured facility. The state contends that because the community corrections program could not meet the defendant's needs, the trial court did not err in revoking his probation. We agree with the state.

The decision to revoke probation is within the discretion of the trial court. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). Upon revoking probation, the trial court has the discretion to order the original sentence to be served. See Tenn. Code Ann. § 40-35-310, -311(d). An abuse of discretion may be found only if the record contains no substantial evidence to support the conclusion of the trial court. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

The defendant admitted testing positive for marijuana in October 2000 and smoking marijuana again eight days before the revocation hearing. The record reflects a consistent failure to comply with reasonable requirements. The defendant has not demonstrated that the trial court abused its discretion by ordering him to serve the remainder of his sentence in incarceration. To the contrary, his admitted drug abuse and refusal to seek treatment for it support the trial court's decision.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____

JOSEPH M. TIPTON, JUDGE